Howard A. Belodoff ISB 2290
Law Office of Howard A. Belodoff, PLLC
1004 W. Fort Street
Boise, ID  83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
hbelodoff@hotmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTINA BERGSTROM,<br><br>                  Plaintiff,<br><br>vs.<br><br>CORIZON, L.L.C., a Missouri Corporation, STACIE DYE, AMY SMITH, AMANDA GENTRY, Warden Pocatello Women's Correctional Center, and JOHN/ JANE DOES 1-10, Identities that are Unknown at this time,<br><br>                  Defendants. | Civil Action No. 1:20-cv-267<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

COME NOW Plaintiff, CHRISTINA BERGSTROM, by and through her attorney, Howard A. Belodoff, of Belodoff Law Office, P.L.L.C., for a cause of action against the Defendants to state and allege as follows:

## I.  GENERAL ALLEGATIONS

1. This is an action brought by Plaintiff, Christina Bergstrom, who previously was incarcerated at the Pocatello Women's Correctional Center in Pocatello, Idaho ("PWCC").

2. On or about April 12, 2018, Plaintiff was sentenced to the custody of the Idaho Department of Correction.

3. On or about April 17, 2020, Plaintiff was release from the custody of the Idaho Department of Corrections and is no longer incarcerated.

4. Plaintiff seeks monetary damages from Defendants for delaying and failing to provide her with the necessary medical care to address a serious medical condition thereby causing her to suffer the unnecessary infliction of pain and permanent injuries.

5. Defendant Corizon L.L.C., its unknown employees, contractors and/or agents, Defendant Stacie Dye, and Defendant Amy Smith, hereinafter "Corizon Defendants" and Defendant Amanda Gentry and other unknown employees, contractors and/or agents of the Idaho Department of Correction, by their actions, customs, practices and policies, under color of state law, were deliberately indifferent to Plaintiff's medical condition and severe pain in violation of the Eighth Amendment to the United States Constitution.

6. Corizon Defendants and other unknown employees, contractors and/or agents of Corizon L.L.C., by their actions, customs, practices and policies, delayed and failed to provide Plaintiff with necessary medical treatment for a serious medical condition and acted in a negligent, grossly negligent, intentional, and reckless manner.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331(3) and (4) for violations of federal law and 28 U.S.C. § 1343 for violations of the constitutionally and federally protected civil rights of the Plaintiff under color of state law.

8. This Court also has jurisdiction over the state law claims asserted herein pursuant to its Supplemental Jurisdiction powers authorized by 28 U.S.C. § 1367.

9. Defendants are subject to personal jurisdiction of the Court because this case arises from Defendants' wrongful conduct in Idaho.

10. This action is properly brought in this District under 28 U.S.C. § 1391(b) because all of the Defendants reside in this District and Plaintiff's claims arose in this District.

11. This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### III. PARTIES

12. Plaintiff is an individual who at all relevant times resided in Idaho and currently resides in Nampa, Idaho.

13. Defendant Corizon LLC ("Corizon") is a Missouri corporation that is qualified to do business, and which does business in the state of Idaho and committed, within the state of Idaho, the acts that are subject of this action.

14. Defendant Stacie Dye and Defendant Amy Smith were employed by Corizon to provide medical services at PWCC and on information and belief engaged in the acts or omissions which are the subject of this action.

15. Defendant Amanda Gentry was the Warden of the PWCC and on information and belief engaged in or ratified the acts or omissions which are the subject of this action during the relevant times alleged herein.

16. John/Jane Does 1 to 10 are unknown individuals employed by the Idaho Department of Corrections and on information and belief engaged in the acts or omissions which are the subject of this action during the relevant times alleged herein.

17. John/Jane Does 1 to 10 are unknown individuals employed by or under contract with Defendant Corizon and on information and belief engaged in the acts or omissions which are the subject of this action during the relevant times alleged herein.

## IV. FACTUAL ALLEGATIONS

18. On or about April 12, 2018 Plaintiff arrived at the PWCC.

19. Plaintiff was housed in the minimum custody unit which is outside the main prison on the same site.

20. Plaintiff was told after arriving at prison that her wisdom teeth needed to be removed.

21. On or about May 17, 2018 submitted a Health Service Request ("HSR") form requesting that the wisdom tooth be pulled.

22. On June 5, 2018 she had three wisdom teeth extracted by the dentist at PWCC.

23. Two of the teeth were pulled without a problem.

24. The dentist had difficulty with one tooth because it broke into pieces.

25. Plaintiff was given some acetaminophen but no antibiotics after the extraction.

26. Plaintiff fully complied with the post-operative instructions she was given by the dentist.

27. On June 7, 2018 Plaintiff began to experiencing a lot of bleeding that filled her month.

28. Plaintiff also began to experience pain and swelling on one side of her face where the wisdom tooth had been extracted and could taste an infection in her mouth.

29. On June 8 and 9, 2028, Plaintiff notified medical staff in her unit about her pain, swelling and bleeding but was told it was normal after the extraction.

30. The medical staff took her vital signs and told her they were normal.

31. Plaintiff was not provided any antibiotics for an infection.

32. Plaintiff was unable to sleep and her pillow was soaked with blood.

33. Plaintiff notified the correctional officers in her unit that she was suffering extreme pain and could not sleep or eat.

34. Plaintiff's swelling in her cheek, jaw and neck was obvious and visible.

35. Plaintiff's skin was red and hot to the touch.

36. Plaintiff could barely open her mouth and was only able to eat pudding.

37. The unit officers allowed her to stay in the day room overnight so she did not disturb the other prisoners.

38. The pain and swelling were getting worse with each passing hour.

39. Medical staff from the main prison saw her condition when they came in her unit for sick call.

40. The medical staff would take her vital signs but Plaintiff was never taken back to the dentist or was examined by a health care provider or doctor.

41. Plaintiff's temperature went from a normal of 98 degrees to a high of 101.5m degrees.

42. Plaintiff's pulse went from a normal of between 77 and 85 to up to 147.

43. The acetaminophen she received did not relieve her extreme pain or reduce the swelling.

44. The acetaminophen did not relieve the horrible pain or swelling.

45. Plaintiff was provided with gauze to try to stop the bleeding in her mouth but the bleeding continued and she had to continually change the gauze.

46. Plaintiff spoke to the unit officers because her pain was so bad she continually cried.

47. The officers notified the medical staff in the main prison of her condition.

48. Plaintiff was told her vital signs were normal and there was nothing more they could do to relieve the pain and swelling.

49. Plaintiff was never examined by a qualified medical provider who could diagnose her medical condition and prescribe treatment to alleviate the pain and swelling caused by the fast growing infection in her jaw, neck and face.

50. Plaintiff was not reexamined by the dentist to determine the cause of the pain and swelling or address her medical condition.

51. Plaintiff had difficulty opening her jaw and her face became distorted from the swelling.

52. The swelling went from the middle of her check, down by neck and to her collar bone.

53. The swelling was so obvious that Plaintiff looked like a "monster."

54. The worsening swelling caused obvious deformities on her face that were observed by the correctional and medical staff that came to the unit.

55. Plaintiff's jaw was so swollen she could barely speak audible words.

56. The pain was so unbearable that Plaintiff could not function, sleep nor eat.

57. Plaintiff was never provided with pain medication or antibiotics to relieve the extreme pain and swelling in her neck, jaw and face.

58. Plaintiff continually informed medical staff that the pain and swelling were getting worse.

59. Plaintiff was specifically told by medical staff that her requests for pain medication would be denied because she just wanted drugs.

60. On June 9, 2018 Plaintiff was allowed to go to the main prison medical unit.

61. The medical staff put her on oxygen because the swelling in her throat was obstructing her ability to breathe.

62. The medical staff told her that they had no authority to order her transported to the emergency room at the hospital.

63. The medical staff telephoned the PWCC's Practitioner to request she come to the PWCC so Plaintiff could be examined by her.

64. Plaintiff waited in the medical unit for one and half hours for the Practitioner to arrive at the prison.

65. Plaintiff heard the Practitioner tell the other medical staff that Plaintiff needed to be transported to the hospital immediately and should have been transported to the hospital sooner.

66. The Practitioner authorized her to be transported to the ER at the Portneuf Regional Medical Center.

67. Plaintiff was driven to the hospital by an officer.

68. Plaintiff was not restrained during the transport.

69. Plaintiff was given a CAT scan and a breathing tube was painfully inserted down her throat so she could breathe.

70. Plaintiff was diagnosed and treated for Ludwig's Angina and taken into surgery.

71. Plaintiff was unconscious two to three days in the Intensive Care Unit after the surgery.

72. Plaintiff was hospitalized in Portneuf Medical Center for six days.

73. Plaintiff continued to have pain and the swelling which was spreading on her face and neck.

74. The doctors in the hospital became very concerned because Plaintiff continued to have pain and swelling and the infection was not responding to the antibiotics.

75. Plaintiff was flown by helicopter to the University of Utah Medical Center in Salt Lake City, Utah.

76. Plaintiff was admitted to the University of Utah Medical Center and was treated with stronger antibiotics for two days.

77. The infection was too deep to be treated with antibiotics due to the delay in providing treatment.

78. Plaintiff's doctors told her that a CAT scan indicated her condition was extremely serious because the infection was near an artery to my brain.

79. Plaintiff underwent a four hour surgical procedure to remove the infection.

80. While in the hospital Plaintiff was guarded by two officers at all times.

81. Plaintiff's right arm and right leg were restrained by handcuffs attached to the bed during the entire time she was recovering in the University of Utah Medical Center.

82. Whenever she went for a walk in the hallway Plaintiff was accompanied by one officer.

83. Plaintiff's legs were shackled together and her arms were shackled using a belt around her waist when she went for a walk as part of her recovery.

84. Plaintiff was shackled when she went to use the bathroom.

85. The continuous use of shackles during her hospitalization inhibited Plaintiff's ability to move and exercise and caused her physical and psychological harm.

86. Plaintiff stayed in the hospital to recover from the surgery until June 22, 2018.

87. Plaintiff was returned to the PWCC infirmary in Pocatello for two weeks.

88. Plaintiff suffered a high degree of pain and swelling following her surgery and hospitalization.

89. Plaintiff had to take medications to relieve her pain from the surgery and to cure and fight off further infection.

90. Plaintiff was unable to eat solid foods while hospitalized and was fed liquids intravenously.

91. As a result, he lost a substantial amount of weight.

92. Plaintiff was unable to fully open her mouth following the surgery. This made it difficult for her to eat and speak.

93. On or about July 6, 2018 Plaintiff had to be admitted for three days to Bingham Memorial Hospital because of continuing pain and swelling.

94. Plaintiff continued to experience pain and swelling in her neck for approximately six months.

95. Her mother was not notified about her condition or hospital stays.

96. When her mother did not hear from her, she called the Warden and was first told that Plaintiff was in the hospital.

97. Plaintiff was not allowed to contact anyone about her medical condition and surgery and was not permitted any visitors while hospitalized.

98. Plaintiff has a permanent and visible five inch scars on her neck as a result of the failure to treat the infection and the necessity of a surgery.

99. Plaintiff continues to suffer numbness and swelling on her neck and face and experience pain when she turns her neck.

100. Plaintiff was forced to endure severe and debilitating pain, an invasive surgery, and has suffered permanent injuries due to the deliberate and willful failure to provide her with timely and necessary medical evaluation, care and treatment of a serious medical condition.

101. Defendants were responsible for providing medical care and treatment to Plaintiff during the period of time she was incarcerated at PWCC.

102. Defendants exhibited deliberative indifference to Plaintiff's medical condition and health care needs by purposefully, intentionally and recklessly delaying and failing to provide or respond to requests for necessary treatment to alleviate Plaintiff's pain and suffering and ongoing infection.

103. Defendants purposefully, intentionally and recklessly have a history, custom, policy, and practice of denying, delaying, ignoring, and improperly responding to inmate medical requests and not taking proper and timely actions to prevent needless pain and injuries cause by a serious medical condition.

104. Defendants did not properly supervise the medical staff who denied and delayed Plaintiff's medical treatment and thereby encouraged, condoned and ratified the denial of necessary medical treatment for a serious medical conditions which caused the infliction of needless pain and injuries upon Plaintiff.

105. Plaintiff was forced to experience pain and suffered emotional distress, mental anguish, physical disability, disfigurement and permanent impairments due to Defendants' failure to timely respond, examine, and treat Plaintiff's serious, medical condition and the failure to reasonably and promptly transfer Plaintiff to a hospital.

106. As a result of Defendants' unlawful and unconstitutional acts, under color of state law, Plaintiff has suffered monetary damages in amounts to be determined at trial.

107.    Plaintiff is entitled to recovery of monetary damages, prejudgment interest, attorneys' fees, and costs.

## FIRST CLAIM FOR RELIEF

### Eighth Amendment

108.    Plaintiff alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully alleged herein.

109.    Defendants, under color of state law, while Plaintiff was under their care and custody, deprived Plaintiff of certain rights, privileges, and/or immunities which are secured by the Eighth Amendment United States Constitution including protection against the unnecessary infliction of cruel and unusual punishment. Defendants purposefully and intentionally delayed and failed to respond to Plaintiff's obvious serious medical condition and failed to have her examined by qualified medical staff to determine the cause of her pain and swelling and who could authorized required medical treatment in order to prevent the need for surgery and her severe and permanent injuries.

110.    The purposeful and intentional delay and failure to respond to Plaintiff's pain and requests for medical treatment directly and proximately resulted in Plaintiff's surgery, hospitalization and her severe and permanent injuries.

111.    Defendants had a duty to select and retain competent employees, contractors and/or agents who were assigned to ensure that Plaintiff received medical care for her serious medical conditions.

112.    Defendants had a duty to properly and reasonably train, monitor, and supervise its employees, contractors and/or agents who were assigned to ensure that Plaintiff received medical care for her serious medical conditions.

113. Defendants had a duty to formulate, adopt and enforce necessary policies, procedures and protocols with respect to the appropriate response or conduct for the use of its employees, contractors and/or agents who were assigned to ensure that Plaintiff received medical care for her serious medical conditions.

114. Defendants failed to ensure compliance with the Idaho Department of Correction's Contract and Standard Operating Procedures for the provision of emergency oral care for inmates suffering from dental pain, swelling and infections.

115. Defendants failed properly supervise and/or train its employees and/or agents relative to the treatment, reporting, and medical oversight of medical care to ensure Plaintiff received medical care for her serious medical conditions.

116. Defendants had prior knowledge that inmates, at other Idaho Department of Correction facilities where Corizon provided medical care, who had dental extractions were experiencing similar pain, swelling and infections that were not being addressed and properly treated as a serious medical condition by medical staff.

117. Defendants failed to properly supervise and/or train its employees, contractors and/or agents was/were the proximate cause(s) of damages to Plaintiff.

118. The deliberate indifference to Plaintiff's serious medical needs caused Plaintiff to suffer unnecessary and continuing pain and permanent injuries and violated her right to be free from the infliction of cruel and unusual punishment.

119. Plaintiff has suffered damages as a direct and proximate result of Defendants' violation of the Plaintiff constitutional rights.

## SECOND CLAIM FOR RELIEF

**Negligent, Reckless, Willful, and Wanton Conduct, Training and Supervision**

120. Plaintiff alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully alleged herein.

121. These causes of action are asserted against the Corizon Defendants and Corizon's unknown employees, agents and contractors.

122. Corizon had a duty to select and retain competent employees, contractors and/or agents who were assigned to treat and deliver medical services to Plaintiff.

123. Corizon had a duty to properly and reasonably train, monitor, and supervise its employees, contractors and/or agents who were assigned to treat and deliver medical services to Plaintiff.

124. Corizon had a duty to formulate, adopt and enforce necessary policies, procedures and protocols with respect to the appropriate response or conduct for its employees, contractors and/or agents who were assigned to treat and deliver medical services to Plaintiff.

125. Corizon failed to properly supervise and/or train its employees and/or agents relative to their examination, treatment, reporting, and medical oversight of Plaintiff.

126. Corizon's failure to properly supervise and/or train its employees, contractors and/or agents was/were the proximate cause(s) of damages to Plaintiff.

127. Corizon Defendants breached the duty of care owed to Plaintiff to act in all respects within the applicable local standards of health care practice.

128. The specific breaches of the local standards of care include, but are not limited to, the following:

    a. Failing to properly evaluate, examine, diagnose, and treat Plaintiff's pain, swelling and infection after a tooth extraction;

    b. Failing to properly and timely transport Plaintiff to receive medical care.

    c. Failing to provide competent, trained, and supervised medical staff.

129. As a direct and proximate result of the acts and omissions of Corizon Defendants Plaintiff has suffered noneconomic damages for pain and suffering, emotional distress, permanent injuries, the loss of enjoyment and the ability to perform daily activities in amounts to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of a Judgment against Defendants that:

1. Declare that Defendants have violated the Eighth Amendment to the United States Constitution;

2. Declare that Corizon Defendants have violated the applicable State law;

3. Awards Plaintiff special and general compensatory damages in an amount proved at trial;

4. Awards Plaintiff punitive damages in an amount proved at trial;

5. Awards Plaintiff prejudgment interest, reasonable attorneys' fees and costs;

6. Awards such other and further relief as this Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted this 5th day of June, 2020.

                                        /s/_____
                                        Howard A. Belodoff, ISB No. 2290
                                        Law Office of
                                         Howard A. Belodoff PLLC
                                        1004 West Fort Street
                                        Boise, ID 83702
                                        Telephone: (208) 331-3378
                                        Facsimile: (208) 947-0014

Email: hbelodoff@hotmail.com