Howard A. Belodoff ISB 2290
Law Office of Howard A. Belodoff, PLLC
1004 W. Fort Street
Boise, ID  83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
hbelodoff@hotmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CHRISTINA BERGSTROM, | ) | |
| | ) | Civil Action No. 1:20-cv-267-CWD |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **FIRST AMENDED COMPLAINT AND** |
| | ) | **DEMAND FOR JURY TRIAL** |
| CORIZON, L.L.C., a Missouri Corporation, | ) | |
| STACIE DYE, AMY SMITH, AMANDA | ) | |
| GENTRY, Warden Pocatello Women's | ) | |
| Correctional Center, and JOHN/ JANE | ) | |
| DOES 1-10, Identities that are Unknown | ) | |
| at this time, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COME NOW Plaintiff, CHRISTINA BERGSTROM, by and through her attorney,

Howard A. Belodoff, of Belodoff Law Office, P.L.L.C., for a cause of action against the

Defendants to state and allege as follows:

## I.  GENERAL ALLEGATIONS

1.      This is an action brought by Plaintiff, Christina Bergstrom, who previously was

incarcerated at the Pocatello Women's Correctional Center in Pocatello, Idaho ("PWCC").

2.      On or about April 12, 2018, Plaintiff was sentenced to the custody of the Idaho

Department of Correction ("IDOC").

3.     On or about April 17, 2020, Plaintiff was released from the custody of the IDOC and is no longer incarcerated.

4.     Plaintiff seeks monetary damages from all Defendants for delaying and failing to provide her with medical care to address a serious medical condition thereby causing her to suffer the unnecessary infliction of pain and permanent injuries.

5.     Defendant Corizon L.L.C., by its actions, customs, policies, and practices, under color of state law, failed to provide Plaintiff with medical treatment for a serious medical condition and was deliberately indifferent to Plaintiff's medical condition in violation of the Eighth Amendment to the United States Constitution and in violation of state law.

6.      Defendant Stacie Dye and Defendant Amy Smith by failing to provide Plaintiff with medical treatment for a serious medical condition, under color of state law, were deliberately indifferent to Plaintiff's medical condition in violation of the Eighth Amendment to the United States Constitution and in violation of state law.

7.     Defendant Amanda Gentry by her actions, customs, practices and policies, under color of state law, was deliberately indifferent to Plaintiff's medical condition and severe pain in violation of the Eighth Amendment to the United States Constitution.

## II. JURISDICTION AND VENUE

8.     This Court has jurisdiction under 28 U.S.C. § 1331(3) and (4) for violations of federal law and 28 U.S.C. § 1343 for violations of the constitutionally and federally protected civil rights of the Plaintiff under color of state law.

9.     This Court also has jurisdiction over the state law claims asserted herein pursuant to its Supplemental Jurisdiction powers authorized by 28 U.S.C. § 1367.

10.     Defendants are subject to personal jurisdiction of the Court because this case arises from Defendants' wrongful conduct in Idaho.

11.     This action is properly brought in this District under 28 U.S.C. § 1391(b) because all of the Defendants reside in this District and Plaintiff's claims arose in this District.

12.     This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### III. PARTIES

13.     Plaintiff is an individual who at all relevant times resided in Idaho and currently resides in Nampa, Idaho.

14.     Defendant Corizon LLC ("Corizon") is a Missouri corporation that is qualified to do business, and which does business in the state of Idaho and committed, within the state of Idaho, and on information and belief, engaged in, supervised, or ratified the acts or omissions of Defendant Dye and Defendant Smith which are the subject of the allegations of this action and incorporated by reference.

15.     Defendant Stacie Dye and Defendant Amy Smith were employed by Corizon to provide medical services at PWCC and on information and belief provided medial services to Plaintiff and engaged in the acts or omissions which are the subject of the allegations of this action and incorporated by reference.

16.     Defendant Amanda Gentry, as the Warden of the PWCC, had the duty and responsibility to ensure, implement, and supervise the provision of medical/dental treatment of inmates in her custody in compliance with IDOC SOPs and Defendant Corizon's contract and on information and belief engaged in, supervised, or ratified the acts or omissions which are the subject of the allegations of this action and incorporated by reference.

17.     Defendant Gentry's actions and inactions were taken as the final decision maker for the customs, policies, and practices of correctional officers regarding the custody of inmates at the PWCC including the provision of medical care by Defendant Corizon.

18.     John/Jane Does 1 to 10 are unknown individuals employed by the Idaho Department of Corrections and on information and belief engaged in, supervised or ratified the acts or omissions which are the subject of the allegations of this action and incorporated by reference.

19.     John/Jane Does 1 to 10 are unknown individuals employed by or under contract with Defendant Corizon and on information and belief engaged in, supervised or ratified the acts or omissions which are the subject of the allegations of this action and incorporated by reference.

## IV. FACTUAL ALLEGATIONS

20.     On or about April 12, 2018 Plaintiff arrived at the PWCC.

21.     Plaintiff, as a non-violent inmate, was classified as minimum custody and was housed in the PWCC's minimum custody unit which is located outside the main prison on the same site.

22.     Plaintiff was told after arriving at the PWCC that three of her wisdom teeth needed to be extracted.

23.     On or about May 17, 2018 Plaintiff submitted a Health Service Request ("HSR") form requesting that the wisdom teeth be pulled.

24.     On June 5, 2018 Plaintiff had three wisdom teeth extracted by the on-call dentist at the PWCC.

25.     Two of the teeth were pulled without a problem.

26.     The dentist had difficulty with one tooth because it broke into pieces.

27.    Plaintiff was given over the counter acetaminophen for pain but no antibiotics were provided to her after the extraction.

28.    Plaintiff fully complied with the post-operative instructions she was given by the dentist.

29.    On June 7, 2018 Plaintiff began to experience a lot of bleeding that filled her month.

30.    Plaintiff also began to experience pain and swelling on one side of her face where the wisdom tooth had been extracted and she could taste an infection in her mouth.

31.    On June 8th and 9th, 2018, Plaintiff continually notified correctional officers in her unit about her pain, swelling and bleeding, that she could not sleep or eat, and needed and had requested medical treatment to alleviate her pain, swelling and bleeding.

32.    On June 8th and 9th, Corizon's medical staff, including Defendant Dye and Defendant Smith, came into her housing unit.

33.    Plaintiff notified the medical staff, including Defendant Dye and Defendant Smith, she was experiencing extreme pain, was unable to sleep, and that her pillow was soaked with blood.

34.     The medical staff, including Defendant Dye and Defendant Smith, examined Plaintiff and told her the pain, swelling, and bleeding were normal after the tooth extraction.

35.    Defendant Dye and Defendant Smith did not provide Plaintiff with any antibiotics for an infection or additional pain medication.

36.    Defendant Dye and Defendant Smith are not qualified health care professionals as defined by Corizon and IDOC Standard Operation Procedures ("SOPs").

37.     Defendant Dye and Defendant Smith did not take Plaintiff to be examined by a qualified health care professional or request that she be examined by a qualified health care professional including the dentist who performed the extraction.

38.     Defendant Dye and Defendant Smith were not qualified or licensed to diagnosis Plaintiff's condition and prescribe treatment.

39.     Plaintiff's swelling in her cheek, jaw and neck was obvious and visible to correctional officers and to Defendant Dye and Defendant Smith.

40.     Plaintiff's skin was red and hot to the touch.

41.     Plaintiff informed Defendant Dye and Defendant Smith that she could barely open her mouth and was only able to eat pudding.

42.     The unit correctional officers informed Plaintiff that the only measures they could provide to address her medical condition or to relieve her extreme pain, swelling, and inability to eat and sleep was to allow her to stay in the day room overnight so she did not disturb the other inmates.

43.     The unit correctional officers told Plaintiff that there was a custom, policy and practice that correctional officers had no supervisory authority to override decisions involving the medical care provided by Defendant Corizon's medical staff or require Corizon to have her examined by a qualified health care professional.

44.     Plaintiff's pain and swelling were getting worse with each passing hour.

45.     Defendant Corizon did not have a full time physician or dentist who delivered and supervised the medical/dental care provided to inmates at the PWCC.

46.     Upon information and belief, no physician and dentist was notified of Plaintiff's serious medical condition or requested to come to the PWCC to diagnosis and to treat her serious and deteriorating medical condition.

47.     Defendant Corizon's medical staff, including Defendant Dye and Defendant Smith, took Plaintiff's vital signs and informed her they were "normal" and there was nothing more they could do to relieve the pain, swelling or the infection.

48.     Defendant Corizon has a custom, policy and practice of informing inmates that their vital signs are "normal" as a pre-textual justification for not calling a qualified health care professional or having an inmate with a serious medical condition examined by a qualified health care professional.

49.     The medical staff, including Defendant Dye and Defendant Smith, who took her vital signs did not take her to be examined by the dentist or to be examined by a qualified health care professional who could diagnosis her serious medical condition and prescribe treatment and medications to relieve her pain and swelling and to stop the spread of the infection which was increasing.

50.     Plaintiff's vital signs were not "normal" because she was experiencing an increase in her body temperature and her pulse was higher than normal.

51.     Plaintiff's temperature went from  98 degrees to a high of 101.5 degrees during the time period when Defendant Dye and Defendant Smith examined her.

52.     A severe infection can cause an abnormal low body temperature.

53.     Plaintiff's pulse rate went from between 77 and 85 to up to 147.

54.     The over the counter acetaminophen she was prescribed did not relieve her extreme pain or reduce the swelling or infection.

55.     The unit correctional officers would only provide Plaintiff with gauze to try to stop the bleeding in her mouth but the bleeding continued and she had to continually change the gauze.

56.     Plaintiff informed the unit correctional officers about her pain and the swelling was obvious.

57.     Plaintiff's pain was so severe that she continually cried in the presents of correctional officers.

58.     Upon information and belief, the unit correctional officers notified Corizon's medical staff in the main PWCC prison of her deteriorating medical condition.

59.     Plaintiff was not reexamined by the dentist to diagnose the cause of the pain and swelling or and prescribe treatment to alleviate the pain and swelling caused by the fast growing infection in her jaw, neck and face.

60.      Plaintiff had difficulty opening her jaw and her face became distorted from the swelling.

61.     The swelling went from the middle of her check, down by neck, and to her collar bone.

62.     Plaintiff began to experience difficulty breathing.

63.     The swelling was so obvious that Plaintiff looked like a "monster."

64.     The worsening swelling caused obvious deformities on her face that were observed by the correctional officers and medical staff, including Defendant Dye and Defendant Smith, that came to the unit.

65.     Plaintiff's jaw was so swollen she could barely speak audible words.

66.     The pain was so unbearable that Plaintiff could not function, sleep nor eat.

67.     Plaintiff was never provided with pain medication or antibiotics to relieve the extreme pain and swelling in her neck, jaw and face.

68.     Plaintiff continually informed medical staff, including  Defendant Dye and Defendant Smith, that the pain and swelling were getting worse.

69.     Plaintiff was specifically told by medical staff, including Defendant Dye and Defendant Smith, that her requests for pain medication would be denied because she just wanted drugs.

70.     On June 9, 2018, the unit correctional officer, due to Plaintiff's obvious need for medical treatment, allowed her  to go to the main prison at the PWCC where the Corizon's nursing staff was located.

71.     Plaintiff was put her on oxygen because the swelling in her throat was obstructing her ability to breathe.

72.     Plaintiff was told by the nursing staff they had no authority to have her transported to the emergency room at the hospital so she could be diagnosed and treated.

73.     The nursing staff had to telephone PWCC's Practitioner to request that she come to the PWCC to examine Plaintiff.

74.     Plaintiff waited for one and half hours for the Practitioner to arrive at the PWCC to be examined by the Practitioner.

75.     Plaintiff heard the Practitioner tell the other nursing staff that Plaintiff needed to be transported to the hospital immediately and should have been transported to the hospital sooner.

76.     The Practitioner authorized her to be transported to the ER at the Portneuf Regional Medical Center.

77.     Plaintiff was driven to the hospital by a correctional officer.

78.     After Plaintiff arrived at the emergency room on June 9th, her body temperature at 16:22 hours was 100.6 degrees and her resting pulse rate was 107.

79.     At 21:17 hours her body temperature increased to 101.6 degrees and her resting pulse rate was 109.

80.     At the hospital, Plaintiff had a CAT scan taken of her face and neck and a breathing tube was painfully inserted down her throat so she could breathe.

81.     Plaintiff was diagnosed as suffering from Ludwig's Angina which can led to death if not treated in a timely manner and was taken into emergency surgery to remove and prevent the infection from spreading.

82.     Plaintiff was unconscious two to three days in the Intensive Care Unit after the surgery.

83.     Plaintiff was hospitalized in the Portneuf Medical Center for six days.

84.     Plaintiff continued to have pain and the swelling because the infection was continuing to grow on her face and neck.

85.     The doctors in the hospital became very concerned because Plaintiff continued to have pain and swelling and the infection was not responding to antibiotics.

86.     Plaintiff was flown by a Life Flight helicopter to the University of Utah Hospital in Salt Lake City, Utah.

87.     Plaintiff was admitted to the University of Utah Hospital and was treated with stronger antibiotics for two days.

88.     The infection was too deep to be treated with antibiotics due to the delays in having a qualified health care professional diagnosed condition and have her transported to a hospital.

89.     Plaintiff's doctors told her that a CAT scan indicated her condition was extremely serious because the infection was near an artery to her brain.

90.     Plaintiff underwent a four hour surgical procedure to remove the infection.

91.     While in the University of Utah Hospital Plaintiff was guarded by two correctional officers at all times.

92.     Plaintiff had not been placed in shackles while she was hospitalized in the Portneuf Medical Center.

93.     Upon information and belief, Defendant Gentry ordered, approved and supervised the use of shackles on Plaintiff while she was hospitalized in the University of Utah Hospital.

94.     Plaintiff was guarded by two officers in her room at all times when she was in the University of Utah Hospital.

95.     Plaintiff was shackled even though she was unconscious and incapacitated due to the surgery and her medical condition.

96.     Plaintiff's right arm and right leg were restrained by metal handcuffs attached to the bed during the entire time she was recovering in the University of Utah Hospital.

97.     Plaintiff's legs were shackled together and her arms were shackled using a belt around her waist when she went for a walk as part of her recovery.

98.     Plaintiff was accompanied by correctional officers when she taken out of her room.

99.     Plaintiff's shackles were only removed when she went to use the bathroom.

100.    The continuous use of shackles during Plaintiff's hospitalization inhibited Plaintiff's ability to move in her bed and exercise and caused her physical pain and psychological harm.

101.    Plaintiff requested the officers remove the shackles.

102.    Plaintiff and the hospital nurses requested the correctional officers to loosen the shackles even though they were told the shackles were causing her pain.

103.    The officers told Plaintiff the shackles could not be removed or loosened to lessen the pain.

104.    Plaintiff stayed in the hospital to recover from the surgery until June 22, 2018.

105.    Plaintiff was returned to the PWCC and was housed in the infirmary for two weeks.

106.    Plaintiff suffered significate pain and swelling following her surgery and hospitalizations.

107.    Plaintiff had to take medications to relieve her pain from the surgery and to cure and fight off further infection.

108.    Plaintiff was unable to eat solid foods while hospitalized and was fed liquids intravenously.

109.    Plaintiff lost weight as a result of not being able to eat solid foods.

110.    Plaintiff was unable to fully open her mouth following the surgery. This made it difficult for her to eat and speak.

111.    On or about July 6, 2018 Plaintiff had to be admitted to Bingham Memorial Hospital for three days because of continuing pain and swelling.

112.    Plaintiff continued to experience pain and swelling in her neck for approximately six months.

113.    The IDOC SOPs required Defendant Gentry notify Plaintiff's mother about her medical condition, that she was hospitalized, and that she had to undergo emergency surgery.

114.    Defendant Gentry did not notified Plaintiff's mother to inform her about her condition or hospitalizations.

115.    Plaintiff regularly spoke by telephone with her mother during her incarceration.

116.    Plaintiff's mother became worried when she had not called her so she telephoned the PWCC and was allowed to speak to Defendant Gentry.

117.    Defendant Gentry told Plaintiff's mother that Plaintiff was in the hospital and informed her of the nature and severity of her medical condition.

118.    Plaintiff was not permitted any visitors while hospitalized.

119.    Plaintiff has a permanent and visible five inch scars on her neck as a result of the failure to treat the infection and the surgeries to remove the infection.

120.    Plaintiff continues to suffer numbness and swelling on her neck and face and experiences pain when she turns her neck.

121.    Plaintiff was forced to endure severe and debilitating pain, invasive surgeries, and prolonged shackling during her hospitalization and recovery from surgeries and has suffered permanent injuries due to the deliberate, callous and reckless failure by Defendant Corizon, Defendant Dye and Defendant Smith to have a qualified health care professional diagnosis and provide her with timely medical evaluation, care and treatment of her serious medical condition.

122.    Defendant Gentry had a duty and was responsible for ensuring that medical care and treatment was provided to Plaintiff during the period of time she was incarcerated at PWCC.

123.    Defendant Corizon had a duty and was responsible for providing medical care and treatment to Plaintiff during the period of time she was incarcerated at PWCC.

124.    IDOC SOPs and the contract with Defendant Corizon require that inmates who experience pain, swelling, and infections should receive emergency medical care.

125.    Defendant Corizon had a duty under IDOC SOPs and the contract with Corizon to train, monitor and supervise Defendant Dye and Defendant Smith and to ensure that Plaintiff was timely examined by a qualified health care professional who could diagnosis and provide medical care and treatment to Plaintiff.

126.    Defendant Gentry had a duty to supervise Defendant Corizon's provision of medical care to Plaintiff and to ensure that while Plaintiff was in custody at the PWCC, she would receive emergency medical treatment by qualified health care professionals who could diagnosis and treat the pain, swelling and infection she was experiencing after a tooth extraction.

127.    Defendant Gentry had duty to supervise and ensure that Defendant Corizon and correctional officers complied with IDOC SOPs and the IDOC contract requiring that Plaintiff receive emergency medical/dental treatment by qualified health care professionals

128.    Upon information and belief, Defendant Gentry knew or should have known that Defendant Corizon was not providing medical treatment to inmates at the PWCC in compliance with IDOC SOP and Corizon's contract because of grievances and reports made by inmates and correctional officers at the PWCC and by audits, reports, and meetings with IDOC staff.

129.    Upon information and belief, Defendant Gentry attends meeting and receives reports from Defendant Corizon and the IDOC on the medical care provided inmates.

130.     Defendant Corizon is required by IDOC SOPs and the IDOC contract to comply with the requirements and the accreditation standards of the National Commission of Correctional Health Care ("NCCHC").

131.     Defendant Gentry failed in her duty to ensure that Defendant Corizon and the correctional officers at PWCC complied with all requirements of the IDOC SOPs, NCCHC accreditation, and the IDOC contract.

132.     Defendant Gentry's customs, policies, and practices directly and proximately caused Plaintiff to needlessly suffer severe pain, required her to be hospitalized and undergo surgeries, to be painfully shackled for a prolonged period of time, and to suffer permanent injuries.

133.     Defendant Gentry knew or should have known that the failure of Defendant Corizon to comply with IDOC SOPs and the IDOC contract to provide emergency medical/dental care to inmates who experience pain, swelling, and infection after a tooth extraction would pose a risk of substantial of harm to Plaintiff.

134.     Defendant Corizon has a custom, policy, and practice of permitting and condoning unqualified and unlicensed employees, such as Defendant Dye and Smith, to diagnosis inmates without the supervision of qualified health care professionals.

135.     Defendant Corizon has a custom, policy, and practice of not training, monitoring, and supervising Defendant Corizon employees, who are not qualified health care professionals.

136.     Defendant Corizon has a custom, policy, and practice of permitting non-qualified health professionals to determine whether to refer inmates with "normal" vital signs but who are experiencing pain, swelling and infections after tooth extractions to qualified health care professionals.

137.    Defendant Corizon has a custom, policy, and practice of not closely monitoring inmates after a tooth extraction and having a qualified health care professional examine, diagnosis, and provide treatment to inmates who experience pain, swelling, and infection after a tooth extraction.

138.    Defendant Corizon has a "Utilization Management Unit" which requires health care staff to submit reports on inmates who are hospitalized in order to monitor the need for hospitalizations and the length of time an inmate should be hospitalized.

139.    Defendant Corizon's "Utilization Management Unit" is aware of and has identified other inmates in IDOC facilities have experienced pain, swelling, and infections after a tooth extraction that required hospitalization and surgery.

140.    Defendant Corizon and its corporate officers knew or should have known that inmates were being hospitalized after tooth extractions because of pain, swelling, and infection due to its custom, practice, and policy of not training, monitoring, and supervising its medical staff to ensure that Plaintiff was timely referred to and examined by a qualified health care professional so she could be diagnosed and receive treatment before she had to be hospitalized to undergo emergency surgeries to remove the infection.

141.    Defendant Corizon corporate officers knew or should have known that not having a protocol and not training medical staff to monitor and refer Plaintiff, who experienced pain, swelling, and infection after a tooth extraction, to qualified health care professionals posed a risk of substantial harm to her.

142.    Defendant Corizon corporate officers knew or should have known that not supervising medical staff, who are non-qualified health care professionals, including Defendant

Dye and Defendant Smith, who examined Plaintiff who was experienced pain, swelling, and infection following a tooth extraction posed a risk of substantial harm to her.

143.   Defendant Corizon and its corporate officials knew and should have known that its customs, policies, and practices, as described in this Amended Complaint, posed a risk of substantial harm to Plaintiff because other inmates incarcerated at IDOC facilities, in which Defendant Corizon was performing tooth extractions, had to be hospitalized after experiencing pain, swelling, and infections because they were not being referred and examined by qualified health care professionals for diagnosis and treatment.

144.   On April 28, 2016, Lance Ocampo ("Ocampo"), an inmate at the North Idaho Correctional Institution ("NICI"), had a wisdom tooth extracted by Defendant Corizon's dentist.[1]

145.   Ocampo submitted health service requests over a period of several days because he was experiencing pain, swelling, and infection after the tooth extraction.

146.   Ocampo requested to be examined by a qualified health care professional and to be transported to a hospital to receive treatment because he thought he was dying.

147.   Defendant Corizon non-qualified health care professionals denied Ocampo's request because he had "normal" vital signs and he was informed that only the "Practitioner" could approve his transport to the hospital.

148.   Ocampo also made requests to NICI correctional officers and his counselor to be transported to a hospital to receive medical treatment.

---

[1] Plaintiff requests the Court take judicial notice of the files in *Ocampo v. Corizon*, Case No. 1:18-cv-00047-DCN. Corizon's counsel in *Ocampo* is the same as in this action. Plaintiff would direct the Court attention to Dkt. 92-1 and the exhibits cited therein. A court may consider matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Judicial orders and decisions and other court records are properly subject to judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001), abrogated on other grounds as stated in *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

149.    The correctional officers at NICI told Ocampo that they had no authority to have him transported to a hospital or override the decision of Defendant Corizon's medical staff.

150.    On May 3, 2016, the NICI nurse had to text a photograph of the obvious swelling on Ocampo's face to Corizon's Practitioner at the prison at Orofino, Idaho to get her permission to order that he be transported to a hospital.

151.    At the hospital in Cottonwood, Idaho, the emergency room physician diagnosed Ocampo with Ludwig's Angina and ordered that he be transported by ambulance to the hospital in Lewiston to undergo emergency surgery to remove the infection in his jaw and neck which was blocking his airway.

152.    Ocmapo was hospitalized for seven days.

153.    An IDOC medical contract monitor and the Warden from the IDOC prison in Orofino, Idaho conducted an investigation into the medical treatment and delays in transporting Ocampo to the hospital and prepared a report that, on information and belief, was provided to the IDOC officials and its employees.

154.    Following Ocampo's hospitalization, Corizon's Regional Medical Director, Rebekah Haggard MD, wrote an email on November 15, 2016 to Connie Smith, Corizon's Regional Nursing Director, Thomas Dolan, Corizon's Regional Vice President, Ryen Valley, Corizon's Director of Operations, indicating that "this is reportedly the 3rd severe dental abscess following tooth extractions this year . . . ."  Dkt. 92-7 at 18.

155.    Corizon's Director of Nursing, Connie Smock also testified that Corizon recently had three post-extraction infection cases where "the nurses waited to take action on significant clinical findings and I am meeting with each." Dkt. 99-2-7 at 31-32 Smock Deposition 157:25-158:3.

156.   On November 17, 2016, Cody Eaton DDS, Corizon's Regional Dental Director, in the email chain with the same Corizon corporate officials wrote: "I think it would be a good idea to discuss managing dental emergencies. I feel a set protocol needs to be made so that both dental and medical are aware of. The protocols can include when to contact the on-call dentist (Dr. Eaton), making immediate referrals to dental if visible swelling is present for immediate extractions, . . . " Dkt. 92-7 at 16.

157.   Cody Eaton further indicated:  "We'll discuss managing dental emergencies at our dental meeting tomorrow. After discussing how to manage dental emergencies, I should type up a protocol in which my peers can review it. Then we can make sure all of dental and medical are aware of it so it can be implemented immediately." Dkt. 92-7 at 16.

158.   Upon information or belief, Corizon knew that if it failed to implement a protocol, train its medical staff, and supervise its medical staff to manage dental emergencies, non-qualified health care professional would continue to delay contacting the on-call dentists and not immediately referring inmates, including Plaintiff, to a qualified health care professional if there is visible swelling.

159.   Defendant Corizon's custom, policies, and practices of not training, monitoring, and supervising its medical staff, not having protocols, and delaying the examination and diagnosis by qualified health care professionals of inmates experiencing pain, swelling, and infections after tooth extractions, directly and proximately caused Plaintiff to needlessly suffer severe pain and swelling, required her to be hospitalized and undergo surgeries to remove the infection, and to suffer permanent injuries.

160.   Defendant Corizon, Defendant Dye, Defendant Smith exhibited deliberative indifference to Plaintiff's medical condition and health care needs by deliberately, callously, and

recklessly delaying and failing to provide or respond to requests for treatment to alleviate Plaintiff's pain and suffering and ongoing infection after her tooth extraction.

161.    Defendant Corizon,  deliberately, callously, and recklessly have a history, custom, policy, and practice of delaying, denying, ignoring, and improperly responding to inmate medical requests after tooth extractions and not taking proper and timely actions to prevent needless pain and injuries cause by a serious medical condition or prevent an inmate from developing Ludwig's Angina which could lead to death.

162.    Defendant Corizon did not properly supervise Defendant Dye and Defendant Smith who denied and delayed Plaintiff's medical treatment and thereby encouraged, condoned and ratified the denial of necessary medical treatment for serious medical conditions after tooth extractions which caused the infliction of needless pain and injuries upon Plaintiff.

163.    Upon information and belief, Defendant Corizon has a custom, policy, and practice of not investigating or disciplining medical staff, including Defendant Dye, Defendant Smith or other Corizon employees for failing to refer Plaintiff to a qualified health care professional and for not contacting the on-call physician or dentist to diagnosis and treat inmates who are experiencing pain, swelling, and infection after a tooth extraction as required by IDOC SOPs and Corizon's contract.

164.    Defendant Gentry's customs, policies, and practices of not training, monitoring, and supervising correctional staff, to ensure complaince with IDOC SOPs and thereby caused inmates experiencing pain, swelling, and infections after tooth extractions not to be examined and diagnosed by qualified health care professionals, directly and proximately caused Plaintiff to needlessly suffer severe pain and swelling, required her to be hospitalized and undergo surgeries to remove the infection, and to suffer permanent injuries.

165.    Upon information and belief, Defendant Gentry has a custom, policy, and practice of not investigating or disciplining correctional officers and medical staff, including Defendant Dye, Defendant Smith or other Corizon employees, for failing to refer inmates to a qualified health care professional or for not contacting the on-call physician or dentist as required by IDOC SOPs and Corizon's contract.

166.    Plaintiff was forced to experience pain and suffered emotional distress, mental anguish, physical disability, disfigurement and permanent impairments due to the failures of Defendant Gentry and Defendant Corizon, Defendant Dye, and Defendant Smith, failure to timely respond, examine, and treat Plaintiff's serious, medical condition after tooth extractions, and the failure to reasonably and promptly transfer Plaintiff to a hospital.

167.    As a result of all of the Defendants' unlawful and unconstitutional acts, under color of state law, Plaintiff has suffered monetary damages in amounts to be determined at trial.

168.    Plaintiff is entitled to recovery of monetary damages, prejudgment interest, attorneys' fees, and costs.

## FIRST CLAIM FOR RELIEF
### Eighth Amendment

169.    Plaintiff alleges and incorporates by reference the preceding paragraphs of this First Amended Complaint as if fully alleged herein.

170.    Defendant Corizon, Defendant Dye, Defendant Smith and Defendant Gentry, under color of state law, while Plaintiff was under their care and custody, deprived Plaintiff of certain rights, privileges, and/or immunities which are secured by the Eighth Amendment United States Constitution including protection against the unnecessary infliction of cruel and unusual punishment. Defendants knowingly and deliberately delayed and failed to respond to Plaintiff's obvious serious medical condition and failed to have her examined by a qualified health care

professional who could diagnosis the cause of her pain, swelling and infection and authorized and prescribe medical treatment in order to prevent the need for hospitalizations, surgeries and her severe and permanent injuries.

171.    The knowing and deliberate delay and failure to respond to Plaintiff's pain, swelling, and infection and requests for medical treatment directly and proximately resulted in Plaintiff's surgeries, hospitalizations and her severe and permanent injuries.

172.    Defendant Corizon's actions or inactions in selecting and retaining competent employees, contractors and/or agents, including Defendant Dye and Defendant Smith, failed to ensure that Plaintiff received medical care for her serious medical conditions.

173.    Defendant Corizon's actions or inactions failed to properly and reasonably train, monitor, and supervise Defendant Dye and Defendant Smith to ensure that Plaintiff received timely, meaningful and appropriate medical care for her serious medical conditions.

174.    Defendant Corizon's and Defendant Gentry's actions or inactions to formulate, adopt and enforce policies, procedures, and protocols failed to ensure that Defendant Dye and Defendant Smith referred Plaintiff to a qualified health care professional to be diagnosed and treated for the pain, swelling, and infection she experienced after a tooth extraction.

175.    Defendant Corizon's and Defendant Gentry's actions or inactions failed to ensure compliance with the IDOC SOPs  for the provision of emergency oral care for inmates suffering from dental pain, swelling and infections.

176.    Defendant Gentry's actions or inactions failed to properly and reasonable train, monitor, and supervise correctional officers to ensure Plaintiff received medical care for her serious medical conditions.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – Page 22

177.    Defendant Corizon and Defendant Gentry knew or should have known that inmates, including at other Idaho Department of Correction facilities where Corizon provided medical/dental care, had experienced similar pain, swelling and infections after tooth extractions and had not been referred to qualified health care professionals for diagnosis and treatment of a serious medical condition.

178.    Defendant Corizon's and Defendant Gentry's actions or inactions in failing to properly train, monitor, and supervise correctional officers and medical staff, including Defendant Dye and Defendant Smith, were the direct and proximate cause(s) of violation of Plaintiff's constitutional rights and Plaintiff's injuries.

179.    Defendant Gentry knew or should have known that shackling Plaintiff, a non-violent minimum custody inmate, guarded by two correctional officers, as described herein, for a prolonged period of time, while she was recovering and incapacitated from surgeries caused her to suffer unnecessary pain and violated her right to be free from the infliction of cruel and unusual punishment.

180.    Defendant Gentry's actions or inactions in failing to train, supervise, or monitor Defendant Corizon, Defendant Dye, Defendant Smith, and PWCC's correctional officers to ensure Plaintiff received emergency medical care, in accordance with her responsibilities under IDOC SOPs, the Corizon contract, and her duty under the Eighth Amendment were the direct and proximate cause(s) of violation of Plaintiff's constitutional right not to be deliberately indifferent to Plaintiff's serious medical needs and Plaintiff's injuries.

181.    Defendant Gentry's actions or inactions in failing to ensure that Corizon's customs, policies, and procedures did not violate Plaintiff's constitutional right to receive

competent medical treatment was the direct and proximate cause of Plaintiff's surgeries, hospitalizations, and her severe and permanent injuries.

182.    Defendant Gentry's actions or inactions, in accordance with a custom, policy, or practice of delegating to Defendant Corizon her constitutional duty to require that correctional officers at the PWCC ensure inmates receive emergency medical treatment, was the direct and proximate cause(s) of violation of Plaintiff's constitutional rights not to be deliberately indifferent to Plaintiff's serious medical needs and Plaintiff's injuries.

183.    Defendant Gentry's knowledge, acquiescence in, failure to prevent, and ratification of Defendant Corizon's unconstitutional customs, policies and procedures, as described herein and incorporated by reference, which were explicitly adopted or tacitly authorized by its corporate officers, directly and proximately caused Plaintiff to be subjected to Defendant Dye and Defendant Smith unconstitutional conduct, as described herein.

184.    Defendant Gentry's actions or inactions disregarded the known and obvious consequences of not training, monitoring and supervising correctional officers and Defendant Corizon's failure to provide medical care to Plaintiff, as described herein.

185.    Defendant Corizon's customs, policies and procedures, explicitly adopted or tacitly authorized by its corporate officers, directly and proximately caused Plaintiff to be subjected to Defendant Dye and Defendant Smith unconstitutional conduct, as described herein.

186.    Defendant Corizon knew and was aware that its customs, policies, and procedures, for responding to Plaintiff's request for medical treatment for the pain, swelling, and infection she was experiencing after a tooth extraction posed a significante risk of developing Ludwig's Angina which would require hospitalization and surgery to remove the infection and prevent her death.

187.     Defendant Corizon knew or should have known that the recommendations to implement a protocol made by its corporate officials and officers would have prevented Plaintiff from not being referred by Defendant Dye and Defendant Smith to a qualified health care professional so Plaintiff could be diagnosed and treated and would have prevented Plaintiff from experiencing pain, swelling, and infection after a tooth extraction that required three hospitalization and two surgeries to have the infection removed.

188.     Defendant Corizon knew and was aware that two year prior to Plaintiff's tooth extraction that at least four other inmates at IDOC facilities had to be hospitalized after developing an infection and at least one inmate was the subject of prior litigation against Corizon.

189.     Defendant Corizon knew or should have known the systemic failure to adopt a protocol for providing medical care to inmates who experience pain, swelling and infection following a tooth extraction in disregard of medical advice and/or obvious medical need would pose a significate risk or likelihood of serious harm to Plaintiff's and other inmates' health and safety.

190.     Defendant Corizon knew that its customs, policies, and procedures, of not monitoring, training, and supervising Defendant Dye and Defendant Smith, as described herein, posed a substantial risk of serious harm to Plaintiff's health and safety.

191.     Defendant Corizon disregarded the known and obvious consequences of not training, monitoring and supervising Defendant Dye and Defendant Smith provision of care to Plaintiff, as described herein.

192.     Defendant Corizon's, Defendant Dye's and Defendant Smith's unconstitutional conduct, as described herein, directly and proximately caused Plaintiff to suffer unnecessary and

continuing pain and permanent injuries and violated her right to be free from the infliction of

cruel and unusual punishment and was the direct and proximate result of customs, policies, and

procedures promulgated, condoned, sanctioned and ratified by Defendant Corizon and its

authorized corporate officials and officers.

193.    Plaintiff has suffered damages as a direct and proximate result of Defendants'

violation of the Plaintiff constitutional rights.

## SECOND CLAIM FOR RELIEF
### State Law Claims

194.    Plaintiff alleges and incorporates by reference the preceding paragraphs of this

First Amended Complaint as if fully alleged herein.

195.    This claim is asserted against Defendant Corizon, Defendant Dye and Defendant

Smith.

196.    Defendant Dye and Defendant Smith at all relevant times were acting within the

course and scope of their employment with Defendant Corizon.

197.    Defendant Corizon, Defendant Dye and Defendant Smith had a duty and breached

their duty to exercise reasonable care to prevent unreasonable and foreseeable risk of harm to

Plaintiff.

198.    Defendant Corizon had a duty to and breached their duty to hire competent and

qualified employees, contractors and/or agents, including Defendant Dye and Defendant Smith,

who were assigned by Defendant Corizon to deliver medical services to Plaintiff.

199.    Defendant Corizon is vicariously liable for the negligent acts or omissions of

Defendant Dye and Defendant Smith, as described herein and incorporated by reference.

200.    Defendant Corizon had a duty and breached their duty to properly and reasonably train, monitor, and supervise Defendant Dye and Defendant Smith who were assigned by Defendant Corizon to deliver medical services to Plaintiff.

201.    Defendant Corizon had a duty and breached their duty to formulate, adopt and enforce policies, procedures and protocols with respect to the conduct by Defendant Dye and Defendant Smith who were assigned by Defendant Corizon to deliver medical services to Plaintiff.

202.    Defendant Corizon had a duty and breached their duty to formulate, adopt and enforce necessary policies, procedures and protocols to refer Plaintiff to a qualified health care professional who could diagnosis and treat Plaintiff after she experienced pain, swelling, and infection following a tooth extraction.

203.    Defendant Corizon had a duty and breached their duty to formulate, adopt and enforce necessary policies, procedures to ensure that its medical staff complies with IDOC SOPs and the IDOC contract.

204.    Defendant Corizon had a duty and breached their duty to properly supervise and/or train Defendant Dye and Defendant Smith relative to their examination, treatment, reporting, and medical oversight of Plaintiff.

205.    Defendant Corizon's failure to properly supervise and/or train Defendant Dye and Defendant Smith was/were the proximate cause(s) of damages to Plaintiff.

206.    Defendant Corizon, Defendant Dye, and Defendant Smith breached the duty of care owed to Plaintiff to act in all respects within the applicable local standards of health care practice.

207.    The specific breaches of the local standards of health care by Defendant Corizon, Defendant Dye and Defendant Smith include, but are not limited to, the following:

a.   Failing to properly evaluate, examine, diagnose, and treat Plaintiff's pain, swelling and infection after a tooth extraction;

b.   Failing to immediately refer Plaintiff to a qualified health care professional who could diagnosis and treat her pain, swelling and infection.

c.   Failing to properly and timely to contact the on call dentist or physician or to transport Plaintiff to receive medical care by a qualified health care professional.

d.   Failing to provide competent, trained, and supervised medical staff.

208.    The action and conduct of Defendant Corizon, Defendant Dye and Defendant Smith was negligent and exhibited a reckless and callous indifference to Plaintiff's medical condition and pain and suffering.

209.    As a direct and proximate cause of the acts and omissions of Defendant Corizon, Defendant Dye, and Defendant Smith, Plaintiff has suffered noneconomic damages for pain and suffering, emotional distress, permanent bodily injuries, the loss of enjoyment, and the ability to perform daily activities in amounts to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of a Judgment against Defendants that:

1.   Declare that Defendants have violated the Eighth Amendment to the United States Constitution;

2.   Declare that Corizon Defendants have violated the applicable State law;

3.    Awards Plaintiff special and general compensatory damages in an amount proved at trial;

4.     Awards Plaintiff punitive damages in an amount proved at trial;

5.     Awards Plaintiff prejudgment interest, reasonable attorneys' fees and costs;

6.     Awards such other and further relief as this Court may deem appropriate.

<strong>DEMAND FOR TRIAL BY JURY</strong>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted this 23th day of September, 2020.

/s/ _____
Howard A. Belodoff, ISB No. 2290
Law Office of
 Howard A. Belodoff PLLC
1004 West Fort Street
Boise, ID 83702
Telephone: (208) 331-3378
Email: hbelodoff@hotmail.com