Howard A. Belodoff ISB 2290
Law Office of Howard A. Belodoff, PLLC
1004 W. Fort Street
Boise, ID  83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
hbelodoff@hotmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CHRISTINA BERGSTROM, | ) | |
| | ) | Civil Action No. 1:20-cv-267-CWD |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **RESPONSE TO GENTRY'S** |
| | ) | **MOTION TO DISMISS WITH** |
| CORIZON, L.L.C., a Missouri Corporation, | ) | **PREJUDICE** |
| STACIE DYE, AMY SMITH, AMANDA | ) | |
| GENTRY, Warden Pocatello Women's | ) | |
| Correctional Center, and JOHN/ JANE | ) | |
| DOES 1-10, Identities that are Unknown | ) | |
| at this time, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COME NOW Plaintiff, by and through her attorney, Howard A. Belodoff, to hereby submit this Response to Defendant Gentry's Memorandum in Support of Motion to Dismiss All Claims Against Warden Gentry with Prejudice ("Memorandum") Dkt. 22-1. The Court should deny Gentry's Motion for the reasons stated herein.

**I. THE STANDARD FOR A MOTION TO DISMISS AT THE PLEADING STAGE**

Fed. R. Civ. P. 8(a)(2) requires a plaintiff's complaint to provide a short and plain statement showing the entitlement to relief in order to give the defendant fair notice of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint attacked by a Rule

12(b)(6) motion "does not need detailed factual allegations" however it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The theory of Rule 8(a), and of the federal rules in general, is notice pleading." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011) *cert. denied*, 566 U.S. 982 (2012).[1] "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'" *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1031 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556. Plausibility at the pleading stage "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim.'" *Starr v. Baca*, 652 F.3d at 1213 (quoting *Twombly*, 550 U.S. at 555).

"The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.[2] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A claim has "substantive plausibility" if a plaintiff alleges "simply, concisely, and directly [the] events" that entitle him to damages. *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). Where a complaint makes factual allegations that "raise a right to relief above the speculative level," a motion to dismiss must be denied. *Twombly*, 550 U.S. at

---

[1] In *Starr* the Court found *Twombly* was concerned with abusive antitrust litigation "'when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint . . . .'" *Starr v. Baca*, 652 F.3d at 1213 (quoting *Twombly*, 550 U.S. at 558) (citation omitted).

[2] In *Iqbal* the Court found that "Iqbal's explanation was not plausible: '[T]he purposeful, invidious discrimination respondent asks us to infer ... *is not a plausible conclusion*.'" *Starr v. Baca*, 652 F.3d at 1214 (quoting *Iqbal* at 1951–52) (emphasis in original).

555. A complaint should not be dismissed at the pleading stage even if it seems that "actual proof of those facts is improbable and 'that a recovery is very remote or unlikely.'" *Id*. at 556 (quoting *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In *Starr v. Baca* the Court grappled with the pleading standard under Rule 8(a) that should be applied between the demanding standard for complex commercial cases in *Twombly*, the protection of high level government officials after the September 11, 2001 terrorist attack in *Iqbal*, and the more lenient standard under the Eighth Amendment in *Erickson v. Pardus*, 551 U.S. 89, (2007) (per curiam). *Starr*, 652 F.3d at 1213-16. The Court held "under the federal rules a complaint is required only to give the notice of the claim such that the opposing party may defend himself or herself effectively. The theory of the federal rules is that **once notice-giving pleadings have been served, the parties are to conduct discovery in order to learn more about the underlying facts.**" *Starr*, 652 F.3d at 1212 (emphasis added).

The Court explained the common governing principles that should be applied by the district courts. First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *Starr v. Baca*, 652 F.3d at 2016.

RESPONSE TO GENTRY'S MOTION TO DISMISS WITH PREJUDICE – Page 3

In *Starr v. Baca* plaintiffs were inmates in the Los Angeles County Jail who had been violently attacked by other inmates. They sued Sheriff Baca alleging he "knew or should have known about the dangers in the Los Angeles County Jail, and that he was deliberately indifferent to those dangers." *Starr*, 652 F.3d at 1214-15. The Court first found that Star's complaint made "detailed factual allegations that go well beyond the elements of a claim of deliberate indifference" that were not "'bald' nor conclusory,' and hence are entitled to the presumption of truth." *Id.* at 1216 (quoting *Iqbal*, 129 S. Ct. at 1951). "These incidents [were] sufficiently detailed to give notice to Sheriff Baca of the nature of Starr's claim against him and to give him a fair opportunity to defend against it." *Id.* The Court recognized "[a]s the Court wrote in *Twombly*, Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Id.* at 1217 (quoting *Twombly*, 550 U.S. at 556) (emphasis in original).

## II.  THE STANDARD APPLIED TO A MOTION FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), all allegations of material fact in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party. *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007) (citing *McGary v. City of Portland,* 386 F.3d 1259, 1261 (9th Cir. 2004). A court must determine whether, "'assuming all facts and inferences in favor of the nonmoving party, it appears beyond doubt that [Marder] can prove no set of facts to support [her] claims.'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir.2003)). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity. . . ." *Id.* "The court may treat such a document as 'part of the

complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003)). A Court may consider documents attached to or referred to in the complaint without transforming the motion to dismiss into a motion for summary judgment. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court may take judicial notice of state statutes and "of the records of state agencies and other undisputed matters of public record" without transforming a motion to dismiss into a motion for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n1 (9th Cir. 2004).

The issue with regard to dismissal is not whether a plaintiff will ultimately prevail; the issue is whether the claimant is entitled to support their claims through proffered evidence. *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007). The Ninth Circuit has reasoned, appropriate dismissal of a complaint occurs if it appears, beyond a doubt, that the plaintiff cannot prove a set of facts in support of the claim which entitles him to relief. *Stoner*, 502 F.3d at 1120. A dismissal of a complaint without leave to amend is improper, unless it is clear that the complaint "could not be saved by any amendment." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1046 (9th Cir. 2006).

## III.  PLAINTIFF SEEKS MONETARY RELIEF AGAINST DEFENDANT GENTRY IN HER INDIVIDUAL CAPACITY AND MAY SEEK DECLARATORY RELIEF

Plaintiff's First Amended Complaint seeks relief against Defendant Gentry in her individual capacity. Defendant Gentry, in her individual capacity, is not immune from damages under the Eleventh Amendment. "[T]he Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983." *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, (1974)). "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under

of state law, caused deprivation of a federal right." *Hafer*, 502 U.S. at 25 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Gentry's further contends the issuance of declaratory relief for "past constitutional violations" would "serve no useful purpose" because Plaintiff is no longer incarcerated Memorandum at 5-6. Gentry's reliance on *Cloyd v. Brewer* is misplaced because the decision was made on a motion for summary judgment rather than a motion to dismiss. The court held "[b]ecause the record contains no evidence of an ongoing violation of Cloyd's rights, his official capacity claim against Carlin fails as a matter of law." *Id.*, 2015 WL 3822293 *7 (June 18, 2015). Plaintiff has pled a plausible claim and is entitled to an opportunity to seek discovery of any evidence to establish ongoing customs and policies as alleged in the First Amended Complaint. Plaintiff has suffered continuing injuries from her incarceration and is currently on parole and subject to being incarcerated until February 18, 2028. Dkt. 21-1 at 37.

## IV.  PLAINTIFF'S COMPLAINT ALLEGES PLAUSIBLE FACTUAL ALLEGATIONS FOR SUPERVISORY LIABILITY AGAINST WARDEN GENTRY

Gentry's argument fails to recognize Plaintiff's First Amended Complaint has plausibly alleged numerous facts which are not conclusory or speculative nor does Plaintiff seek to impose *respondeat superior* liability. Plaintiff has pled numerous factual allegations against Gentry. *Iqbal*, 556 U.S. at 678. Plaintiff has alleged Gentry had the duty and responsibility to ensure, implement, and supervise the provision of her medical/dental treatment in compliance with IDOC SOPs and Corizon's contract and she engaged in, supervised, or ratified the acts or omissions of Corizon. *Id.* at ¶ 16. Plaintiff has alleged Gentry's actions and inactions were taken as the final decision maker for the customs, policies, and practices of correctional officers regarding the provision of medical care by Corizon. *Id.* at ¶ 17. Plaintiff has alleged she requested medical assistance from officers for her visible and obvious pain, swelling, infection,

and bleeding but the only response from Defendants Dye and Smith was that it was "normal" under Corizon's custom and policy of not calling qualified medical professionals to examine and diagnosis inmates. *Id.* at ¶s 29-41 & 47-48. The officers' only response was to have Plaintiff lay in the day room for days and give her gauze for the bleeding. *Id.* at ¶s 42 & 55. The Court should reject Gentry's attempt to improperly impose a "probability requirement" based upon the merits.

Plaintiff has alleged Gentry was the final decision maker who approved or ratified the customs and policies of correctional officers not ensuring inmates suffering dental emergencies receive medical care by qualified medical professionals after Corizon, Dye, and Smith failed to address Plaintiff's obvious pain, swelling and infection and bleeding. *Id.* at ¶s 43 & 56. Plaintiff's need for medical care over a period of sixty hours was obvious because she was crying, unable to open her mouth, the swelling deformed her face so that she looked like a "monster," and was bleeding, and she had difficulty breathing, speaking in audible words, sleeping, and eating. *Id.* at ¶s 57 & 60-66. Plaintiff has alleged Gentry knew or reasonably should have known that the customs and policies of failing to train, supervise, and monitor correctional officers and Corizon's care, would cause her to suffer needless pain and obvious swelling, infection, and bleeding while over three days officers stood by in violation of IDOC SOP.

Plaintiff has alleged Gentry had the duty and responsibility for ensuring that medical care and treatment was provided to Plaintiff during the period of time she was incarcerated at PWCC." *Id.* at ¶ 122. Plaintiff has alleged Gentry had a duty under the IDOC SOP to supervise and ensure that Corizon's provided qualified health care professionals who could diagnosis and treat the obvious and visible pain, swelling, infection, and bleeding she was experiencing. *Id.* at ¶ 126. Plaintiff has alleged Gentry had a duty to supervise and ensure Corizon and officers complied with IDOC's SOP and Corizon's contract requiring emergency dental care. *Id.* at ¶

127. Plaintiff has alleged that Gentry knew or should have known and acquiesced in and ratified Corizon's custom, policy, and practice of not timely providing emergency medical treatment in compliance with IDOC's SOP, Corizon's contract, and NCCHC standards because of grievances and reports made by inmates and correctional officers at the PWCC and by audits, reports, meetings with IDOC staff and Corizon, and after an IDOC investigation uncovered similar instances when inmates had to be hospitalized after tooth extraction at other IDOC facilities. *Id.* at ¶s 128-129, 131 & 144-153. Plaintiff has alleged that Gentry's customs, policies, and practices directly and proximately caused her to needlessly suffer severe pain, required her to undergo two extensive surgeries and to be hospitalized three times, to be painfully shackled for a prolonged period of time, and to suffer permanent injuries which all posed a substantial risk of harm to Plaintiff. *Id.* at ¶s 132-133. Plaintiff further alleged:

> 164.    Defendant Gentry's customs, policies, and practices of not training, monitoring, and supervising correctional staff, to ensure compliance with IDOC SOPs and thereby caused inmates experiencing pain, swelling, and infections after tooth extractions not to be examined and diagnosed by qualified health care professionals, directly and proximately caused Plaintiff to needlessly suffer severe pain and swelling, required her to be hospitalized and undergo surgeries to remove the infection, and to suffer permanent injuries.

> 165.    Upon information and belief, Defendant Gentry has a custom, policy, and practice of not investigating or disciplining correctional officers and medical staff, including Defendant Dye, Defendant Smith or other Corizon employees, for failing to refer inmates to a qualified health care professional or for not contacting the on-call physician or dentist as required by IDOC SOPs and Corizon's contract.

These factual allegations are not "'bald' nor conclusory,' and hence are entitled to the presumption of truth." *Starr*, 652 F.3d at 1216 (quoting *Iqbal*, 129 S. Ct. at 1951). The allegations contain enough facts to give Gentry fair notice so can she can defend herself and states a claim "to plausibly give rise to an entitlement to relief" not simply a recitation of the elements of a cause of action. *Iqbal*, 556 U.S. at 679. The factual allegations "raise a reasonable

expectation that discovery will reveal evidence" to support the allegations." *Twombly*, 550 U.S. at 556. The motion to dismiss should be denied even though Gentry contends recovery is very remote or unlikely. A complaint should not be dismissed at the pleading stage even if it seems that "actual proof of those facts is improbable and 'that a recovery is very remote or unlikely.'" *Twombly*, at 556. (quoting *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The Court should deny Gentry's Motion because she is asserting arguments that are reserved for summary judgment on the standard for deliberate indifference after Plaintiff has conducted discovery.[3] Gentry improperly seeks to impose a "probability requirement" on Plaintiff's factual allegations. *Iqbal*, 556 U.S. at 678. A complaint must only contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. " "Rule 8(a)(2) 'indicates that a basic objective of the rules is to avoid civil cases turning on technicalities.'" *Johnson*, 574 U.S. at 11 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215, p. 172 (3d ed. 2004)).

Gentry's contentions that there are no factual allegations she participated in, knew of the alleged violations, or failed to prevent the violations, overlook numerous non-conclusory factual allegations against her. Memorandum at 9. Gentry's further contends that even if she "was told of the medical issues, . . such allegations do not demonstrate that Warden Gentry personally participated in Plaintiff's medical care and treatment" and "fails to overcome the rule that '[supervisors are not vicariously liable for constitutional violations under § 1983.'" Memorandum at 11 (quoting *Ellis v. Corizon*, Case No. 1:15-cv-00304-CWD, [Dkt. No. 7] (D. Idaho Dec. 8, 2015) at *7-8. The Ninth Circuit has recognized after *Iqbal* the continued validity of a broad basis for supervisory liability against supervisors and their subordinates.

---

[3] The decisions in *Cloyd v. Brewer* and *Kaelin v. Blades* are not relevant because they were made on motions for summary judgment on the merits not whether plaintiffs had alleged plausible claims. *See Cloyd*, 2015 WL 3822293 (June 18, 2015); *Kaelin*, 2016 WL 11185563 (Oct. 31, 2016).

RESPONSE TO GENTRY'S MOTION TO DISMISS WITH PREJUDICE – Page 9

> "'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'"

*Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (internal alteration and quotation marks omitted)).

The Court held "[w]e have never required a plaintiff to allege that a supervisor was physically present when the injury occurred." *Id.* at 1205. The Court "explained that to be held liable, the supervisor need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Id.* (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir.1991)). "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.' *Id.* at 1205-06 (quoting *Larez*, 946 F.2d at 646 (internal citations, quotation marks, and alterations omitted)). The Court also recognized "[w]e have held that 'acquiescence or culpable indifference' may suffice to show that a supervisor 'personally played a role in the alleged constitutional violations.'" [4] *Starr*, 652 F.3d at 1208 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir.2005) (citing *Redman v. City of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (cert. denied 502 U.S. 1074 (1992).[5] The Supreme Court has applied a deliberate

---

[4] "Starr allege[d] that Sheriff Baca's knowledge of the unconstitutional conditions in the jail, including his knowledge of the culpable actions of his subordinates, coupled with his inaction, amounted to acquiescence in the unconstitutional conduct of his subordinates." *Starr*, 652 F.3d at 1208.

[5] *See also Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (holding that supervisors who ignored complaints of deficient medical care by a medical contractor could be liable for deliberate indifference under the Eighth Amendment); *Keating v. City of Miami*, 598 F.3d 753, 764-65 (11th Cir. 2010) (supervisors violate the constitution when they know of unconstitutional conduct or that subordinates will act unconstitutionally, possess the power to order their subordinates to cease, but fail to do so); *Wright v.*

indifference standard to a prison warden who allegedly failed to prevent the use of excessive force by subordinates in violation of Bureau of Prison policy citing parallels to a failure to provide medical treatment to a prisoner. *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1864 (2017) (citing *Carlson v. Green*, 446 U.S. 14 (1980)).

Gentry improperly seeks to impose a "heightened" pleading requirement which the Supreme Court rejected in *Twombly*. *Id.* at 570 ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). In a subsequent decision the Supreme Court rejected a "heightened" pleading requirement for municipal liability. *Johnson*, 574 U.S. at 11 ("a federal court may not apply a standard 'more stringent than the usual pleading requirements of Rule 8(a)' in 'civil rights cases alleging municipal liability'") (quoting *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, (1993)). The Supreme Court stated a complaint has "substantive plausibility" when the plaintiff "stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Johnson*, at 12 (citing Fed. Rules Civ. Proc. 8(a)(2) and (3), (d)(1), (e)).

In *Roberts v. Blades* the Court screened a prisoner's complaint to determine if the "claims appear plausible and supported at least by some particular factual allegations." *Id.* at 2014 WL 7149576 *1 (D. Idaho Dec. 15, 2014). The Court recognized the prisoner's difficulty in pleading allegations because the evidence needed to support the claims was solely in the hands of officials. *Id.* The prisoner alleged the medical defendant refused to treat his severe pain or

_____

*Leis*, 335 Fed. Appx. 552 (6th Cir. 2009) (Accepting the failure to train as a viable theory for claim against supervisor where jail detainee alleged he was subjected to excessive force by line officer.).

schedule surgery and that Corizon has a policy and custom of not providing pain medication. *Id.,* at *3. Plaintiff alleged the warden was "involved in the oversight and review of Corizon's medical treatment." *Id.* The Court held plaintiff stated a claim against the prison warden. *Id.* (citing *Starr*, 652 F.3d at 1205-09). The Court recognized that "[w]hile Warden Blades has no direct supervisory authority over Corizon medical staff, he is ultimately responsible for the health and welfare of inmates in his prison, and has authority to make or order additional inquiries into an inmate's health care complaints that are brought to his attention." *Id.*

Roberts alleged the warden had notice of his medical problems and did nothing to resolve them. The Court held non-medical prison personal cannot rely upon the opinions of medical personal "if 'a reasonable person would likely determine [the medical treatment] to be inferior,' the fact that an official is not medically trained will not shield that official from liability for deliberate indifference.'" *Id.* at *4 (quoting *Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir.2012) (citations omitted). Additionally "officials who ignore continuing complaints may be deliberately indifferent. *Id.* Judge Winmill correctly framed the issue as "where claims are asserted against persons who supervise the provision of prison medical care, the question is not whether the supervisor was "directly involved" in the plaintiff's diagnosis, but whether the plaintiff has sufficiently alleged or provided evidence from which a jury could find that the supervisor's knowing failure to address the treating provider's deficient care rendered Plaintiff's medical treatment constitutionally inadequate." *Id.* (citation omitted). The Court held Roberts stated a plausible claim and could proceed to discovery. *Id.* at *5.

In *Niendorf v. Gooding County* plaintiff's pleading alleged the County was deliberately indifferent to a serious medical need, failed to train and supervise officers under the Eighth Amendment, and was negligent under state law after an inmate committed suicide in the jail. *Id.,*

2010 WL 742857 (D. Idaho February 25, 2010). Defendants filed a motion to dismiss contending that the pleadings did not meet the plausibility standard and the factual allegations were largely conclusory statements. *Id.,* at *1. Similar to Gentry's Motion, defendants argued: "while Plaintiffs may have formulaically recited the elements of a cause of action, under *Iqbal*, the absence of any further specificity morphs their allegations into bare legal conclusions, unsupported by any factual allegations." *Id.,* at *5. The Court recognized: "Plaintiffs' allegations that the individual Defendants knew Mr. Caster was at a substantial risk of committing suicide, yet intentionally disregarded that risk, are more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation;' they allow this Court 'to draw the reasonable inference that the [individual Defendants] [are] liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at __, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 50)). Plaintiff's factual allegations plausibly state a claim and are not bare legal conclusions. The County also contended that "'Plaintiffs have not identified any actual and specific written or unwritten policy that was created, adopted or practiced by Gooding County ....'" *Id.,* at *8. Plaintiff has alleged specific customs and policies. The Court rejected the County's arguments noting that in deliberate indifference cases similar to Plaintiff's it is proper for the court to consider that a plaintiff is at a disadvantage prior to discovery of not having access to crucial information that is within the control of defendants.

> "It became clear, during oral argument, it became clear to all that the allegedly necessary "substance" of Mr. Caster's conduct is, alas, in the possession of either the deceased or Defendants themselves which, thus, necessarily puts Plaintiffs in a "Catch–22" and hampers them from incorporating the specificity Defendants now argue is required."

*Id.* at *8.

Judge Bush adopted the proper analysis of the pleading requirements in the context of *Iqbal's* holding that this Court should also apply:

> Here, the Court has carefully examined Plaintiffs' allegations in the context of *Iqbal's* holding and Defendants' arguments. At the outset, the Court is inclined to grant some credence to these allegations, recognizing Plaintiffs' counsel's obligation to the Court that (1) the factual allegations have (or will likely have) evidentiary support and, similarly, (2) the alleged claims are warranted by existing law. *See* Fed.R.Civ.P. 11. Additionally, the Court understands that actual discovery is just beginning and, as discussed later, the nature of certain discovery may be difficult for Plaintiffs to readily obtain; in other words, the Court goes into its consideration of this Motion with an assumption, drawn from counsel's responsibilities as an officer of the court, that Plaintiffs' allegations extend beyond their counsel's imagination.

*Id.* at *2.

In *Fair v. Atencio*, a *pro se* inmate was instructed in an Initial Review Order to amend his complaint to plausibly state failure to protect claims by identifying the correctional officers who failed to intervene to stop the attack and the prison officials who knew plaintiff was being targeted by prison gangs yet deliberately failed to protect him. *Id.* at 2019 WL 1645204 *3. Fair failed to timely amend the complaint. *Id.* The court held the complaint did not state a plausible claim because the "allegations simply do not raise a reasonable inference that either the director or the warden personally participated in the alleged violation of Plaintiff's constitutional rights or that a sufficient causal connection exists to render them liable as supervisors." *Id.* (citation omitted). The court found the one allegation identifying either Director Atencio and Warden Yordy was "bare, conclusory statements of the elements of an Eighth Amendment claim" and did not allege they were "actually aware of the risk" and "deliberately disregarded that risk." *3-4 (citation omitted). In *Ellis v. Corizon* the inmate merely alleged the wardens were notified of his medical problems at a meeting for monitoring a class action. *Id.* at *7 Case No. 1:15-cv-00304{Dkt. 7] (D. Idaho Dec. 8, 2015). Plaintiff's factual allegations stand in stark contrast to the allegations the Court rejected in *Fair v. Atencio* and *Ellis v. Corizon*.

Plaintiff has alleged numerous factual allegations that Gentry knew or should have

known of the risk of harm from the failure to provide medical care in compliance with IDOC

SOPs and Corizon's contract, the failure to supervise and train officers, the failure to supervise

Corizon, and the deliberate disregard and ratification of acts or omissions that proximately

caused the risk of harm to Plaintiff.[6] *Supra* at 6-8 &17. Warden Gentry had authority over the

officers and Corizon's compliance with IDOC's policies. The IDOC has promulgated Standard

Operating Procedures ("SOP") for the provision of medical/dental care. SOP 401, for Clinical

Services and Treatment, "applies to all standard operating procedures created under its authority

and to all employees and contractors of the IDOC." *See* Declaration of Howard Belodoff at

Exhibit 1SOP 401.06.03.036, for Oral Care, "applies to all Idaho Department of Correction

(ICOC) employees, inmates, healthcare contractors and subcontractors." The Oral Care SOP

requires that "[e]mergency dental treatment is available to all inmates and includes, but is not

limited to, treatment for the following: Pain Infection and Jaw and Facial Swelling Bleeding . . .

." Declaration of Howard Belodoff at Exhibit 2.

Plaintiff suffered pain, swelling, infection, and bleeding while officers and Corizon for

sixty hours over three days failed to comply with the SOP requiring she be provided emergency

dental care. Plaintiff has alleged "Gentry, as the Warden of the PWCC, had the duty and

responsibility to ensure, implement, and supervise, the provision of medical/dental treatment in

compliance with IDOC SOPs and Defendant Corizon's contract and engaged in, supervised, or

ratified the acts or omissions which are the subject of Plaintiff's allegations. Amended Complaint

at ¶s 16, 127, & 131. The SOPs provide evidence that Gentry knew or should have known that

the failure to train and supervise officers and Corizon employees to provide timely access to

---

[6] *Cf.* "Plaintiff alleges that he sent numerous medical grievances to IDOC Medical Administrator Rona Siegert, informing her of the deficiencies in treatment, but Ms. Siegert did nothing to resolve his complaints. **Because Ms. Siegert is alleged to be in a position of authority to research and address inmates' medical issues on behalf of the IDOC, the Court will permit Plaintiff to proceed against her.**" *Ellis* at *7 (emphasis added).

qualified health care providers was substantially certain to result in delayed treatment and unconstitutional care. *See Gibson v. County of Washoe*, 290 F.3d 1175, 1191 (9th Cir. 2002) (finding that existence of a mental health screening policy put county on notice that failure to screen was necessary to avoid serious harm to detainees); *Castro*, 833 F.3d 1060, 1077 (9th Cir. 2016) (holding that a building codes requiring 'sound-actuated audio monitoring systems' put county jail on notice that the failure to monitor multiple belligerent drunks in sobering cell gave rise to a serious risk of harm); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016) (holding that policy prohibiting shackling of women in labor put county on notice of substantial risk of harm inherent in the practice) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl v. Brown*, 489 U.S. 397, 405 (1997).[7]

## V. PLAINTIFF'S FACTUAL ALLEGATIONS ON THE USE OF RESTRAINTS PLAUSIBLE ALLEGES A VIOLATION OF THE EIGHTH AMENDMENT

Gentry contends, assuming Plaintiff's factual allegation as true, the use of restraints during her hospitalization does not rise to the level of deliberate indifference under the Eighth Amendment. Memorandum at 13. Gentry relies upon an unpublished Ninth Circuit decision and a district court decision which are distinguishable on the facts.[8] Plaintiff has plausibly alleged non-conclusory facts not just the elements of the claim which puts Gentry on notice and allows her to proceed with discovery. The Court should reject Gentry's argument to improperly impose

---

[7] In *Gray v. Shed* the court held the failure to serve a complaint by a prison official did not state a claim. *Id.* at 2012 WL 3149264, at *2 (D. Idaho Aug. 1, 2012). Gray did not allege a claim based upon supervisory liability or a violation under federal law. *Id.*, at *2-3.

[8] *Taggart v. MacDonald*, 131 Fed.Appx. 544, 546 (9th Cir. 2005) held that "Taggart failed to allege facts that support a claim that defendants acted unreasonably or used excessive force against him" but did not rule on the merits of his Eighth Amendment claim. In *McDaniels v. United States* plaintiff claimed he was handcuffed too tightly by several officers. 2016 WL 11520610 *4 (D.C.D. CA. July 7, 2016). Plaintiff was allowed to amend his complaint against the individual officers because his claim was not futile. *Id.* at *6. The court requested plaintiff to allege: how long he was in handcuffs; whether he specifically advised the officers that the handcuffs were causing him pain, whether the officers could loosen the handcuffs; whether larger handcuffs were available; why plaintiff was placed in handcuffs; and whether plaintiff was injured. *Id.* Plaintiff's Complaint includes the factual allegations required in *McDaniels*.

a heightened pleading requirement akin to a "probability requirement." *Iqbal*, 556 U.S. at 678. Plaintiff has alleged she was classified as a minimum custody non-violent inmate who was housed outside of the PWCC in the minimum custody unit. First Amended Complaint at ¶ 21. Plaintiff was not previously shackled at the Portneuf Medical Center prior to being hospitalized at the University of Utah. *Id.* at ¶ 92. Plaintiff has alleged that she "was guarded by two officers in her room at all times . . . ." *Id.* at ¶ 94. Plaintiff has alleged that, Gentry "ordered, approved and supervised the use of shackles on Plaintiff while she was hospitalized in the University of Utah Hospital" even when she was "unconscious and incapacitated due to the surgery and her medical condition." *Id.* at ¶ 93 & 95. Plaintiff has alleged her right arm and right leg were shackled to her bed with metal handcuffs at all times during her hospitalization except when she went to use the bathroom. *Id.* at ¶s 96 & 99. Plaintiff has alleged her legs were shackled together and her arms were shackled using a belt around her waist when she walked with officers as part of her recovery. *Id.* at ¶s 97-98. Plaintiff has alleged for seven days "[t]he continuous use of shackles during Plaintiff's hospitalization inhibited Plaintiff's ability to move in her bed and exercise and caused her physical pain and psychological harm." *Id.* at ¶ 100. Plaintiff has alleged her and the nursing staff's requests to remove or loosen the shackles were denied even though they were causing her pain. *Id.* at ¶s 101-102. Plaintiff has alleged the officers told her the shackles could not be removed or loosen to lessen he pain. *Id.* at ¶ 103. Plaintiff has alleged that Gentry was aware of Plaintiff's hospitalization because she told Plaintiff's mother she was hospitalized and about the nature and severity of her medical condition. *Id.* at ¶ 117.

The Supreme Court in *Hope v. Pelzer* analyzed whether cuffing an inmate to a hitching post or similar stationary object violated the Eighth Amendment. *Hope,* 536 U.S. 730, 733-34 (2002). Hope was first hand cuffed to a hitching post for two hours as a form of punishment and

was offered water and a bathroom break. *Id.*, at 734. The "handcuffs cut into his wrists, causing pain and discomfort." *Id.* The second time he was handcuffed to the post was for seven hours in the sun without a shirt and was given water once or twice and no bathroom breaks. *Id.* The Court held "[d]espite the clear the lack of an emergency situation, the respondents knowingly subjected him to a substantial risk of physical harm . . . . The use of the hitching post under these circumstances violated the 'basic concept underlying the Eighth Amendment[, which] is nothing less than the dignity of man.'" *Id.*, at 738 (quoting *Trop v. Dulles*, 356 U.S. 86, 100 (1958)). *See also Estelle v. Gamble*, 429 U.S. 97, (1976) (or "'involve the unnecessary and wanton infliction of pain'") (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

The Ninth Circuit has addressed the use of shackles including handcuffs, neck chains, and leg manacles when transporting dangerous and violent prisoners within and outside the prison. *Spain v. Procunier*, 600 F.2d 189,192 &196 (9th Cir. 1979). "The trial court found that use of these devices for all out-of-cell movements was dehumanizing, and that it was cruel and unusual punishment." *Id.* at 197. The Ninth Circuit held that "[i]f the physical or mental pain that results is cruel and unusual, it is a violation of the eighth amendment regardless of the intent or purpose of those who inflict it." *Id.* at 197. The Court approved the Department of Corrections' subsequent adoption of policies for the use of mechanical restraints only where the inmate has a past history of violence or escape which would "create a reasonable likelihood of bodily injury to any person or escape will otherwise occur." *Id.* at 198. The Court held the adopted policy "should inform any reasonable assessment of whether or not prisoners should be subjected to undue discomfort or humiliation caused by the restraints." *Id.* at 199. The restraints policy prohibited using restraints "in any way so as to inflict physical pain, undue physical discomfort, or to restrict blood circulation or breathing [and] [r]estraint equipment will not be used to secure

an inmate or parolee to a stationary object except as a temporary emergency measure." *Id.* at 198. Handcuffs could only be used and additional chains or other specialized equipment were "permitted only where it reasonably appears that individual circumstances exist which justify the use of such additional equipment." *Id.* Gentry's use of shackles on Plaintiff violated this policy.

Plaintiff was a classified as a non-violent minimum security and did not pose a security risk. Common sense indicates that if shackling was not required during her first hospitalization there was no justification for subjecting Plaintiff to the unnecessary infliction of pain and psychological harm caused by shackling her arms and legs with metal handcuffs to her hospital bed for seven days even though two guards were present at all times during her recovery including when she was unconscious and incapacitated. In *May v. Sheahan*, the Court held similar allegations of shackling were "more than adequate to survive a motion to dismiss." *May*, 226 F.3d 876, 884 (7th Cir. 2000) ("But, it is hard to see how shackling an AIDS patient to his or her bed around the clock, despite the continuous presence of a guard, is an appropriate policy for carrying out this purpose [security concerns]. Such a policy is plainly excessive in the absence of any indication that the detainee poses some sort of security risk." The Court found plaintiff was entitled to conduct discovery to determine if "Sheahan can produce evidence justifying both his shackling policy in general and his shackling of May in particular. . . ." Plaintiff has conducted discovery to determine whether or not a written or unwritten shackling policy exists and whether Gentry was justified in shackling plaintiff. A reasonable inference can be made that officers were not acting on their own when they shackled Plaintiff's arms and legs to her bed for seven days without the Warden' knowledge, acquiesce, and ratification under an unconstitutional policy or ad hoc order. Gentry would also be liable for her failure to train officers and to adopt a constitutional shackling policy similar to the policy approved by the Ninth Circuit.

## VI.   PLAINTIFF IS NOT ASSERTING A CLAIM ON BEHALF OF HER MOTHER

Plaintiff has not alleged a third party claim based upon Gentry's failure to communicate with her mother under the Eighth Amendment. Gentry's argument on this ground is moot.

## VII.   PLAINTIFF IS NOT ASSERTING A CLAIM ON BEHALF OF LANCE OCAMPO

Plaintiff is not alleging a claim on behalf of Lance Ocampo. The allegations that other inmates, suffered pain, swelling, and infections after tooth extractions, had surgeries, and were hospitalization is relevant to Corizon's and officers' customs and policies and whether Gentry knew or reasonable should have known of dangers of not being provided medical care by qualified health care professionals after tooth extractions. *See Perez v. Cox*, 788 Fed.Appx. 438,441 (9th Cir. 2019) ("Supervisor Defendants are presumed to have knowledge of that troubling history and to be responsible for their own actions, inactions, or acquiescence in response to that history."). Plaintiff has alleged Gentry had authority, but failed, or acquiesces in, the failure to address constitutional violations and her failure to train or supervise officers and Corizon, showed a reckless or callous indifference to Plaintiff's rights. *See Supra* at 10 (citing *Starr*, 652 F.3d at 1205-06).[9] The allegations under Rule 12(f) are not "immaterial" because they are important to the claim for relief and are not 'impertinent' because they pertain to and are relevant to the claim. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). Rule 12(f) may not seek to dismiss parts of the Complaint. *Id.* (quoting *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir.1977) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380, at 782 (1969)). *See also Miesen v. Hendrson*, 2017 WL 1458191*4 (D. Idaho Apr. 21, 2017) (Rule 12(f) motions are disfavored and will be denied if material has "any relation to the subject matter of the controversy.") (internal quotation and

---

[9] Starr pled supervisor liability alleging Baca was aware of other inmates being attacked and killed in the jail and based upon reports he received from the United States Department of Justice, subordinates and the County's Special Counsel and Office of Independent Review. *Starr*, 652 F.3d at 1209-12.

citation omitted).

DATED this 26th day of October, 2020.

Law Office of Howard A. Belodoff, PLLC

/s/ _____
Howard A. Belodoff
Attorney for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of October, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing and a copy of this document to the following persons:

Dylan A. Eaton
deaton@parsonsbehle.com
Andrew R. Alder
AAlder@parsonsbehle.com
Parsons, Behle & Latimer
Attorneys for Defendats *Corizon, LLC,*
Stacie Dye and Amy Smith

Robert A. Berry
robert.berrry@ag.idaho.gov
Dayton P. Reed
Office of Attorney General
dayton.reed@ag.idaho.gov
Attorneys for Defendant Gentry